UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
=============================================================

TIMOTHY SANTIAGO,

       Plaintiff,

v.                                   1:05-CV-259 (NPM)

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
-------------------------------------------------------------------------------------------------

APPEARANCES                      OF COUNSEL

Steven J. Mastaitis, PC            Steven J. Mastaitis, Esq.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

Office of the United States Attorney     William H. Pease, Esq.
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

     Plaintiff Timothy Santiago ("Plaintiff") brings this action pursuant to

§ 205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C. §§ 405(g).

Plaintiff seeks review of the final decision of the defendant Commissioner of the

Social Security Administration ("Commissioner") denying Plaintiff's claim for

Title II Social Security Disability Insurance Benefits ("DIB") and Title XVI

Supplemental Security Income ("SSI") benefits under the Act.  For the reasons

stated below, the Commissioner's decision is affirmed.

## I.      PROCEDURAL HISTORY AND FACTS

The following procedural history is taken from the record in this case.

Plaintiff filed applications for DIB and SSI benefits on January 3, 2002, alleging

disability since February 3, 1998, due to problems with his lower back, diagnosed

as, inter alia, lumbar syndrome, left radiculitis, and degenerative joint disease.

The applications were denied at the initial level, and Plaintiff requested a hearing.[1]

Plaintiff filed a timely request for an administrative hearing, which was held

on April 14, 2003, in Johnstown, New York.  The claim was again denied by the

Administrative Law Judge's ("ALJ") decision handed down on June 12, 2003.  On

July 3, 2003, Plaintiff filed a timely request for review of the ALJ's decision. The

Appeals Council denied the application for review on January 27, 2005.  Plaintiff

appealed to this court on March 15, 2005.

The court reviews and adopts the facts set forth in Plaintiff's medical

records from the administrative transcript, and will reiterate only as needed for the

purpose of this ruling.  The court recites the following undisputed facts from the

---

[1]      Plaintiff's case was part of a pilot program in which the reconsideration step of the disability determination process was eliminated. 20 C.F.R. § 906(B)(4). (Doc. No. 13).

record.  Plaintiff was 45 years of age on the date of the filing of this appeal,

standing 6' 6" tall and weighing 180 pounds. R. at 246.[2]  Plaintiff has a high

school education plus one year of college.  Plaintiff injured his back lifting boxes

while unloading a truck at his workplace, Ames Department Store, on February 2,

1998.  He complained of back and left leg pain subsequent to that incident.  A

magnetic resonance imaging ("MRI") of Plaintiff's spine taken on March 23,

1998, compared to an earlier MRI from April 1996, showed a slight increase in the

L5-S1 disc protrusion impinging on the left S1 nerve root.  At that time, Plaintiff

was diagnosed with lumbar syndrome and left radiculitis. R. at 91.  Plaintiff had

been employed at the job for approximately ten months before his injury. R. at 90.

Prior to that job, he was self-employed for more than 15 years as a leather

craftsman, which entailed purchasing and transporting raw materials, fabricating

leather goods including wallets, belts, purses, etc., and selling the finished goods

at various craft shows throughout the Northeastern United States. R. at 293.

    Prior to January 2001, Plaintiff had a drug and alcohol problem.  He

attended inpatient rehabilitation at Conifer Park in January and February of 2001.

Plaintiff asserts that he successfully completed rehabilitation and has remained

clean and sober since that time. Doc. No. 8 at 4.

---

[2]        Unless otherwise noted, references ("R. at __") are to the administrative record.

## II.   DISCUSSION

### A.   Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the
> residual functional capacity to perform [his] past relevant
> work. Finally, if the claimant is unable to perform [his]
> past relevant work, the Secretary determines whether the
> claimant is capable of performing any other work. If the
> claimant satisfies [his] burden of proving the
> requirements in the first four steps, the burden then shifts
> to the Secretary to prove in the fifth step that the
> claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

**B.      Analysis**

1.      Treating Physician Rule

Plaintiff argues that the ALJ failed to give appropriate weight to the treating physicians.  The opinion of a treating physician is generally given more weight if it is based on well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

Similarly, more weight is given to the opinion of a source who has examined the

plaintiff than to a non-examining source.  20 C.F.R. 404.1527 (d)(2);

416.927(d)(2).  See also Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

    In the case at bar, despite the regular involvement of Plaintiff's primary care

physician, Dr. George Dasher, the ALJ devotes no more than five sentences to Dr.

Dasher's assessment of the plaintiff.  The court concurs with Plaintiff's assertion

that Dr. Dasher's records of treatment from May 12, 2000 through September 14,

2004 corroborates persistent, chronic low back and upper extremity pain

aggravated by activity.  For instance, on March 6, 2001, Plaintiff was seen by Dr.

Dasher for a flare-up of back pain "after cutting wood a month ago." R. at 187.

On September 28, 2001, Plaintiff advised Dr. Dasher that he was still in pain, had

been going to pain management for two months, and needed a note stating his

physical abilities for a new job he was starting. R. at 185.  On November 11, 2002,

although unrelated to his back problems (except as impeachment for later

testimony that he was unable to do maintenance jobs around the house), Plaintiff

phoned Dr. Dasher to advise that he had injured his hand after falling from a roof.

Id.  On November 27, 2001, in a follow up visit for his hand injury, Plaintiff was

seen by Dr. Dasher, and advised the doctor that in addition to his back pain, which

was no better, he was experiencing new pain in his elbows, feet and hips.  Plaintiff

explained to Dr. Dasher that he was an alcoholic, and since he had stopped

drinking, he was noticing this new pain. R. at 184.  By December 10, 2001,

Plaintiff advised Dr. Dasher that he was experiencing an increase in body pain. R.

at 183.  On January 22, 2002, Plaintiff reinjured his back at his new job as a ski lift

attendant. R. at 182.  By January 31, 2002, Plaintiff asserted that his pain had

spread to his legs, buttocks, and feet. R. at 181.  However, on an April 11, 2002

visit, Dr. Dasher noted that a recent MRI showed that Plaintiff's condition was

basically unchanged. R. at 180.  On October 18, 2002, plaintiff phoned Dr. Dasher

and advised that he was starting to drop things. R. at 176.  On December 13, 2002,

plaintiff requested information on obtaining a TENS[3] unit for his pain. R. at 174.

Dr. Dasher treated Plaintiff with various prescription medications while noting

that Plaintiff was also being treated, inter alia, by a chiropractor, an acupuncturist,

and with biofeedback, steroid injections, and physical therapy. See, e.g., R. at 191,

169, 185 and 183.

Following Plaintiff's job related injury of February 2, 1998, orthopedic

physician Dr. Albert Kochersperger opined that Plaintiff had a partial moderate

disability. R. at 91.  When medication prescribed for Plaintiff by his

rheumatologist, Dr. Norman Romanoff, caused him to suffer anxiety, plaintiff

---

[3]        Transcutaneous Electrical Nerve Stimulator.

sought help at a mental health facility. R. at 233-39.   On March 31, 2003, Plaintiff

complained to Dr. Dasher of "mental problems," including inability to concentrate,

depression, and inability to focus his eyes.  At a followup visit on April 10, 2003,

plaintiff told Dr. Dasher that he went to Fulton County Mental Health the previous

day for an intake appointment.  R. at 169.

A thorough review of the medical records from Plaintiff's treating

physicians reveals redundant information, appearing elsewhere in the record, that

the ALJ restated in his decision but attributed to sources other than the physicians

themselves.  The court finds that although the ALJ did not articulate that he

considered the lengthy records from Dr. Dasher and Plaintiff's other treating

physicians, there is substantial evidence in the ALJ's decision that he did just that.

Plaintiff's argument that in reaching his decision the ALJ disregarded the evidence

from his treating physicians is without merit.

### 2.    Alcohol and Drug Use Not Significant in Impairments

Plaintiff also asserts that the ALJ erred in concluding that a history of

alcohol and drug use substantially contributed to the plaintiff's non-exertional

impairments.[4]  Plaintiff complains that he is disabled by symptoms of depression

---

[4]        Absent any evidence that Plaintiff currently abuses alcohol, the court accepts
Plaintiff's assertions that he remains alcohol and drug free.

and anxiety attacks, which he asserts have been present for some time. R. at 312.

In considering these impairments, the ALJ considered Plaintiff's lengthy history of

alcohol abuse.

"An individual shall not be considered to be disabled ... if alcoholism or

drug addiction would ... be a contributing factor material to the Commissioner's

determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C).

Although the ALJ heard testimony that "claimant completed treatment and

apparently has remained sober since he completed treatment," the ALJ "finds that

the claimant's mental health problems are related to his chronic alcohol abuse and

that any diminution in the claimant's residual functional capacity is directly

related to his abuse history." R. at 312.  The court need not reach the question of

the causation of Plaintiff's non-exertional impairments, and will not second-guess

the ALJ's consideration of same, as the substantial evidence in the case weighs in

favor of a finding that the plaintiff is not disabled under the Act.

### 3.    Severity of Impairments

Plaintiff  asserts that the Commissioner erred in finding that none of his

severe impairments, either alone or in combination, meets or equals the level of

severity of any listing.  The ALJ found that "[t]he medical evidence indicates that

the claimant has low back pain, [and] alcohol abuse, impairments that are severe

within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." R. at 18.  The ALJ concluded that Plaintiff "has severe impairments secondary to low back pain and chronic drug and alcohol abuse since his impairments have had more than a slight impact on his ability to engage in substantial gainful work."  In explaining this conclusion, the ALJ opined that "[t]he claimant's back impairment has never caused significant reflex, motor or sensory loss.  Consequently, his impairment has never met or equaled the level of severity of any impairment contained in Appendix 1."  In addressing Plaintiff's past alcohol abuse, the ALJ stated that "[l]ikewise, the claimant's impairment secondary to chronic alcohol abuse has not resulted in a disabling degree of physical deterioration due to cirrhosis, seizures or organic deficits." Id.  After a thorough review of the record, the court finds that even though the cumulative medical evidence reveals that Plaintiff undoubtedly has chronic pain as a result of his lower back problem, the ALJ based his decision that Plaintiff's impairment is not one listed in Appendix 1 of the regulations on substantial evidence in the record.  The court finds that the correct legal standards were applied by the ALJ, and that the ALJ adhered to the clear guidance of 20 C.F.R. 404.1527 (d)(2) and the settled law in this circuit in finding that Plaintiff is not under a disability as defined in the Act.

4.      Failure to call vocational expert

Because the ALJ found that none of plaintiff's severe impairments, either alone or in combination, met or equaled the level of severity of any listing, the ALJ stated that "[c]onsequently, a determination must therefore be made whether he retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy." R. at 18.  Plaintiff asserts, and the ALJ concurs, that plaintiff is no longer able to perform his previous work.  R. at 312.  "Since the claimant's past relevant work required a strenuous level of exertion and since there is some evidence that the claimant suffers from a back impairment, [it] is reasonable to conclude that the claimant is no longer capable of meeting the exertional demands of his past relevant work." R. at 21.  However, the ALJ found, pursuant to the fourth step in the test for a finding of disability, that Plaintiff retained the residual functional capacity ("RFC") for a full range of at least light work. R. at 19.

Plaintiff asserts that the ALJ's failure to call a vocational expert ("VE") to testify on a record which includes a non-exertional impairment is reversible error. As set forth above, "[o]nce a disability claimant proves that his severe impairment prevents him from performing his past work, the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to

12

perform alternative substantial gainful work which exists in the national economy." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  "In the ordinary case the [Commissioner] satisfies his burden by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App.2 (1986)." Id. When the claimant's non-exertional impairments significantly diminish his ability to work, the testimony of a VE should be introduced as to whether jobs a claimant can obtain and perform exist in the economy.  However, the court in Bapp held that "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.  "Under Bapp, the applicability of the grids should be considered on a case-by-case basis ... [w]hen a claimant's non-exertional impairments significantly diminish his ability to work, the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform  ...  Remand is particularly appropriate ... where [the Second Circuit] [is] unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (internal citations and quotations omitted).

As set forth supra, Plaintiff also takes issue with the ALJ's determination

that his non-exertional impairments, i.e., his mental health problems are related to his chronic alcohol abuse." R. at 21. However, the progress notes from plaintiff's mental health clinic visit dated April 18, 2003 stated that "[i]t appears that patient is having difficulty adjusting to several life changes, including returning to school, changing careers, family, and financial strains. In combination with his chronic pain and history of excessive alcohol use, it appears that the above has impacted his ability [to] concentrate, focus, and function to his fullest potential." R. at 239. The ALJ concluded that Plaintiff's non-exertional limitations would not preclude him from working, and the court finds that the record substantiates that conclusion. A thorough review of the record reveals only sporadic complaint by Plaintiff of any mental concerns. The court also notes that Plaintiff's mental health intake form stated that plaintiff "[b]ecomes despondent for several hours occasionally." R. at 233. Plaintiff remained active, and was in fact able to attempt other work. For instance, in the fall of 2001, Plaintiff was hired as a waiter and asked Dr. Dasher for a note to advise his new employer what activities he was capable of performing. R. at 185. In January of 2002, Plaintiff was employed as a ski lift attendant. In the spring of 2003, Plaintiff began taking online classes to become a Chemical Dependency Counselor, with funding provided by NYS

VESID.[5]  Doc. No. 8 at 5; R at 169, 301-03.   The court finds no evidence in the record that Plaintiff's depression and anxiety has significantly thwarted his efforts to work or to train for another vocation.  The ALJ has met his burden of proof that Plaintiff's non-exertional impairments do not significantly diminish his ability to work.

### 5.     ALJ's Assessment of Santiago's Credibility

The ALJ found that Plaintiff's "allegations regarding his limitations are not entirely credible." R. at 24.  Specifically, the ALJ opines that despite evidence in the record that shows that Plaintiff injured his back in 1998 and had allegedly not worked since that time, "there are numerous references in the record to the claimant being a self-employed leather craftsman," and a progress note dated April 18, 2003, from Fulton County Mental Health stated that plaintiff had "recently decided to change careers due to a decrease in business." R. at 21, 233.

In addition to the ALJ's findings regarding Plaintiff's credibility on, inter alia, employment history, the court notes that the administrative record indicates Plaintiff was not entirely credible regarding his pre-existing back problems.  On October 22, 2002, Plaintiff stated to Dr. Romanoff that he had a history of low

---

[5]         Office of Vocational and Educational Services for Individuals with Disabilities, a division of the New York State Education Department. See www.vesid.nysed.gov.

back pain back problems going back twenty years. R. at 245.  Plaintiff informed

Dr. Kochersperger that his back pain went back several years, and that he would

often have a chiropractor "tune up" his back several times a year.  R. at 90.  When

examined by Dr. Charles Reina pursuant to his Worker's Compensation claim

against Ames Department stores, Plaintiff stated that he only visited a doctor or

chiropractor for back problems once or twice a year for maintenance purposes. R.

at 93.

The court concurs with the ALJ that the hearing testimony of Plaintiff and

his wife  contradicts both the medical evidence and Plaintiff's own statements to

his medical providers.  Therefore, the court finds that the ALJ properly evaluated

Plaintiff's credibility with regard to his allegations of disabling pain and severe

non-exertional limitations.

6.    Later Onset or Limited Period of Liability

Plaintiff asserts that as an alternative, since he has been clean and sober

since January 30, 2001, the ALJ should have considered a period of disability as

supported by the record of both exertional and non-exertional impairments since

January 30, 2001.  The relevant law governing a closed period of disability is as

follows:

In most instances where disability benefits are awarded,

16

the award is open-ended and on-going in conjunction
with a continuing disabling impairment. But in some
instances the determination of disability takes so long
that by the time the claim is adjudicated the
impairment(s) may no longer be disabling. In such
circumstances, the claimant may wish to request a
"closed period" of disability.

Social Security Disability Claims: Practice and Procedure § 22.161 (West 2007).

In the case at bar, the record indicates that during the proposed closed period,

Plaintiff worked at least one job, enrolled in continuing education, and quite

possibly continued his leather craft business into 2003.  The court finds no

evidence in the record that would compel it to impose a limited or closed period of

disability.

### 7.    Substantial Evidence Supports ALJ's Conclusion

In sum, the record supports the Commissioner's conclusion at step five in

the five-step sequential analysis that Santiago is not disabled.  The Act requires

that to be determined to be under a disability, a claimant must have impairments of

such severity that he is not only unable to do his previous work but cannot,

considering his age, education and work experience, engage in any other kind of

substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423

(d)(2)(A), 1382c(a)(3)(B).  Plaintiff, at the time of his appeal, was matriculated in

college and training for a new career as a drug and alcohol dependency counselor.

17

Accordingly, the court finds that the ALJ has met the step five burden of proof that the plaintiff is capable of working in the national economy.

## III.   CONCLUSION

For the reasons set forth in the body of this decision, the Commissioner's decision denying plaintiff's disability benefits is hereby AFFIRMED.  The Commissioner's motion for judgment on the pleadings is GRANTED.

SO ORDERED.

December 12, 2007

_____
Neal P. McCurn
Senior  U.S. District Judge